UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYNN GORDON, AS GUARDIAN OF DEAVYN GORDON, and DEAVYN GORDON, <br> Plaintiffs, <br><br> v. <br><br> HARRIS COUNTY, TEXAS; CONSTABLE KEN JONES; DEPUTY JEFFREY GONZALES; DEPUTY KENNETH JONES; DEPUTY LLOYD CLARK; and DEPUTY ANDRE SHORTS; <br> Defendants. | § § § § § § § § § § § § § § § § | Civil Action No: <br><br> 14-3463 <br><br><br><br><br> JURY DEMANDED |

## COMPLAINT

COME NOW Lynn Gordon, as Guardian of Deavyn Gordon, and Deavyn Gordon (collectively referred to as "Plaintiff"), complaining of Defendants, and, for causes of action, would respectfully show the court the following:

STATEMENT OF CLAIM

1. Plaintiffs bring this civil action for damages against Harris County, Constable Ken Jones, And Deputies Jeffrey Gonzales, Kenneth Jones, Lloyd Clark, and Andre Shorts. Defendants took Deavyn Gordon into custody, knowing that Deavyn Gordon had a firearm and, due to his clearly apparent severe mental illness, bipolar disorder and depression, that he intended to commit suicide or otherwise harm himself. Defendants did not take the gun from Deavyn Gordon but rather isolated him in the backseat of a patrol vehicle with the firearm. After Defendants isolated him during this mental health crisis, Deavyn Gordon shot himself and

1

caused serious and permanent injuries from which he will suffer for the remainder of his life.

2. Defendants violated (a) the Americans with Disabilities Act, 42 U.S.C. §12132; (b) the Rehabilitation Act, 42 U.S.C. §794a; and (c) the Civil Rights Act of 1871, 42 U.S.C. §1983.

## JURISDICTION AND VENUE

3. Jurisdiction is based on 28 U.S.C. §1331.

4. Venue is proper under 28 U.S.C. §1391(b)(2) because all acts complained of occurred in this district.

## PARTIES

5. Plaintiff Lynn Gordon is the natural father and guardian of Plaintiff Deavyn Gordon. Deavyn Gordon is no longer a minor but might in fact be a person who is non compos mentis, in which case his father is Plaintiff in a representational capacity. If he is in fact compos mentis, Deavyn Gordon is a Plaintiff in his individual capacity. Lynn Gordon and Deavyn Gordon are residents of Harris County, Texas.

6. Defendant Harris County is a political subdivision of this State which may be served with process herein by serving the clerk of Harris County Commissioners Court, at 1001 Preston, Room 610, Houston, TX 77002.

7. Defendant Constable Ken Jones is an individual residing in Harris County, Texas. Defendant may be served with process herein at his work address, 14350 Wallisville Road, Houston, Texas 77049, or wherever he may be found.

8. Defendant Deputies Jeffrey Gonzalez, Kenneth Jones, Lloyd Clark, and Andre Shorts are individuals residing in Harris County, Texas. They may be served with process herein at

their work address, 14350 Wallisville Road, Houston, Texas 77049, or wherever they may be found.

## STATEMENT OF FACTS

9. Defendants took Deavyn Gordon into custody, knowing that he was mentally ill, had a firearm, and, due to his severe bipolar disorder and depression, he intended to commit suicide or otherwise harm himself. Defendants isolated Mr. Gordon him in the backseat of a patrol vehicle, but failed to remove the firearm from him. After Defendants isolated him during this mental health crisis, he shot himself and caused serious, permanent injuries from which he will suffer for the remainder of his life.

10. During fall of 2012, Plaintiff Deavyn Gordon was a seventeen-year-old student of North Shore Senior High School in Harris County. He had a mental disability, depression with bipolar disorder. Mr. Gordon had a known history of exhibiting suicidal ideation. On one occasion earlier in 2012, he had attempted to commit suicide while at school.

11. On December 5, 2012, a teacher at North Shore Senior High School received information from a student that Deavyn Gordon was on the campus during normal school hours and that he had the intention of harming himself with a gun that he had in his possession. The teacher and student contacted Defendant DEPUTY JEFFREY GONZALES, who was serving as security at the school, and told Deputy Gonzalez of the threat. Other school staff and students also received information of Mr. Gordon's suicidal intent and possession of a weapon, and relayed this information to Deputy Gonzales.

12. Defendants Gonzales, Jones, Clark, And Shorts commenced a search of the school campus along with numerous school staff. By this point, all school staff and all of the Defendants

3

knew that Deavyn Gordon had the intention of committing suicide, had a gun in his possession, and had a history of suicide attempts.

13. Defendant Deputy Gonzalez found Deavyn Gordon in a restroom and immediately placed him in handcuffs with his arms pulled behind his back. Deputy Gonzales determined that the young man needed mental health care treatment because he was not acting like a normal individual.

14. Once Deavyn Gordon was restrained, the other Defendants and school staff arrived. Even in handcuffs, Mr. Gordon was attempting to reach to his side, near his waistband, to retrieve the gun. Seeing this movement, Deputy Gonzales pulled Mr. Gordon's handcuffed arms away and kept him pinned to the floor of the restroom.

15. Shockingly, neither Deputy Gonzales nor any other Defendant searched Deavyn Gordon or attempted to remove the gun from his possession. The Defendant deputies' decision not to search Mr. Gordon was in line with their usual practice of not searching for and taking away dangerous objects from student detainees at the school, despite formal County policies requiring a search of all detainees.

16. After approximately fifteen minutes, the Defendants Gonzalez and Shorts, together with Deputy Longoria acting at the direction of Defendant Clark, lifted Mr. Gordon off the ground and carried him outside the school to where Deputy Jones was waiting with a patrol vehicle.

17. The Defendants placed Deavyn Gordon in the backseat of the patrol vehicle, on his stomach, while he was still in handcuffs. The Defendants closed the doors on the backseat of the patrol vehicle so that the young man was alone in the backseat and partitioned from the driver's compartment. No Defendant conducted a search of Mr. Gordon's person or removed the

4

gun before or after secluding him in the patrol vehicle.

18. Defendant Deputy Kenneth Jones then boarded the patrol vehicle and drove a short distance with Deavyn Gordon in the back of the vehicle. As Deputy Jones was driving, Mr. Gordon retrieved the gun and shot himself.

19. The bullet entered Deavyn Gordon's skull and caused severe traumatic injury to his brain and nervous system generally. He continues to suffer permanent, serious, and debilitating injuries as a result of this incident, including difficulty speaking, moving the right side of his body, and learning.

## COURSE AND SCOPE OF EMPLOYMENT

20. At all times material hereto, Defendant were acting in the course and scope of their employment with Defendant Harris County and Defendant Constable Ken Jones. Defendants Harris County and Constable Jones were responsible for the training and supervision of the Defendant deputies

21. Harris County and Constable Jones' written policy requires each peace officer who takes custody of a detainee to conduct a search of the detainee's person. However, there is an informal policy among Deputies of Constable Precinct 3 of which Harris County and Constable Jones were well aware or should have been aware whereby deputies such as Defendants do not search student detainees who are taken into custody on school grounds. On the occasion in question, Defendant deputies complied with the informal policy which violated the written policy of Harris County and Constable Jones. Harris County and Constable Jones either failed to properly train Defendant deputies on the critical necessity of conducting a search of all detainees, student or otherwise, because of the inherent danger if they did not do so or failed to properly supervise Defendant deputies in the execution of the policy. This was either an

5

intentional decision by them or grossly deliberate indifference.

## CAUSES OF ACTION

22. On the occasion in question, Defendants violated:

    (a) the Americans with Disabilities Act, 42 U.S.C. §12132;

    (b) the Rehabilitation Act, 42 U.S.C. §794a; and

    (c) the Civil Rights Act of 1871, 42 U.S.C. §1983.

    I. <u>Americans with Disabilities Act and Section 504 of the Rehabilitation Act</u>
       <u>(Against Defendant Harris County and Ken Jones in his official capacity</u>)

23. Incorporating all allegations herein, Defendants Harris County and Constable Jones, in his official capacity, are liable for violating Deavyn Gordon's right to reasonable accommodation and equal benefits under the Americans with Disabilities Act and the Rehabilitation Act.

24. Harris County and Constable Jones' Precinct have been, and are, recipients of federal funds, and thus are covered by the mandate of Section 504 of the Rehabilitation Act (29 U.S.C. §794). Section 504 requires that recipients of federal monies reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

25. Title II of the ADA (42 U.S.C. §12131-12134) applies to Harris County and the Constable's office as public entities. Title II affirmatively requires that public entities modify their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities by not accommodating them: "A public entity shall make reasonable modifications in policies, practices, or procedures when modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. §35.130(b)(7).

26. Defendants' operation of Harris County Constable Precinct 3, including the provision of transport for detainees in need of mental health care, and North Shore Senior High School, including the provision of security for students, are programs and services for purposes of Section 504 and Title II of the ADA.

27. Deavyn Gordon was known to Defendants to have a mental illness. He had depression with bipolar disorder during the time relevant to the incident described in this complaint and is thus a qualified person with a disability protected by the ADA and a handicapped individual protected by Section 504.

28. Once the Defendant deputies had secured the scene—after Deavyn Gordon was restrained in the restroom—the Defendant deputies were obligated to provide reasonable accommodation to Mr. Gordon, whom they knew had a disability. The Defendant deputies could and should have reasonably accommodated him by transporting him to receive mental health care in a manner that did not seclude him with the means to harm himself. For example, the Defendant deputies could and should have ensured Mr. Gordon was supervised or could have taken away the gun from him because his having the gun posed an obvious and dangerous risk to him and others. The obvious deliberate failures of the Defendant deputies demonstrate violations on the part of themselves as well as Defendants Harris County and Constable Jones in his official capacity under Section 504 and Title II of the ADA.

29. Harris County failed to ensure that its employees were adequately educated and trained in policies that would ensure the safe transport of detainees to mental health facilities. Harris County and Constable Jones have a policy requiring its Deputies, like the Defendant deputies here, to transport detainees, like Deavyn Gordon; but Harris County and Constable Jones failed to make reasonable accommodations to ensure this transportation would be safe for

detainees with Mr. Gordon's disability: First, the Defendant deputies were wholly inadequately trained because they did not retrieve the gun from Deavyn Gordon, which was obviously a danger to himself and others. Second, the policy was grossly deficient and inadequate because it failed to require that the Defendant deputies use a safe method of transporting detainees with Mr. Gordon's disability, such as supervising him rather than secluding him. These were either intentional decisions by Harris County and Constable Jones or grossly deliberate indifference.

29. The Defendant deputies were grossly negligent and deliberately indifferent on the occasion in question and their failures placed Deavyn Gordon in imminent danger because of his disability. The Defendant deputies isolated and secluded him with the means of injuring or killing himself, substantially increasing the risk of harm, rather than providing the benefit of safe transportation to health care—a service provided by Defendants. The conduct of the Defendant deputies as well as Harris County and Constable Jones deliberately and intentionally denied Mr. Gordon the accommodation and equal benefit required by law.

30. Deavyn Gordon's disability was well known to the Defendant deputies at the time they denied him the accommodation required by law. The Defendant deputies knew he had a history of mental illness and suicide attempts and had threatened to commit suicide that very day, which is why they were called to the school. Deliberately allowing Mr. Gordon, in those circumstances, to keep a gun within his possession knowingly, willfully and/o recklessly placed him in harm's way. The Defendant deputies' denial of reasonable accommodation knowingly enhanced a real, obvious risk of self-inflicted death—and ultimately resulted in permanently debilitating injury—which could have been eliminated with readily achievable accommodation that Defendants deliberately and intentionally denied him.

## II. 42 U.S.C. §1983 - 14th Amendment - Right to Safety and Medical Care while in Custody (Against Individual Defendants)

31.     Incorporating all allegations herein, Defendants are liable to the Plaintiff for, under color of state law, violating Deavyn Gordon's right to safety and reasonable medical care while in government custody guaranteed by the Fourteenth Amendment.

32.     These rights to safety and reasonable medical care are clearly established: "[P]retrial detainees enjoy the same rights as convicted prisoners to 'constitutional essentials like medical care and safety,' which includes 'adequate protection from known suicidal tendencies[].'" *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (internal citations omitted).

33.     Defendant deputies deliberately ignored a known, serious risk to Deavyn Gordon's safety: They knew he was mentally ill and had a history of suicide attempts, had threatened to commit suicide that day, and had a gun in his possession. Despite these known risks, the Defendant deputies were deliberately indifferent because they failed to search Mr. Gordon, to take the gun from him, or to supervise him while he was in the back of a patrol car. Even after the Defendant deputies saw him actively reaching for the gun in the bathroom, the Defendant deputies did not to conduct a search of Mr. Gordon's person and decided to put him in a secluded place where he had the means to kill himself. These were intentional decisions by Defendants.

## III. 42 U.S.C. §1983 - 14th Amendment - Right to Safety and Medical Care while in Custody (Against Harris County and Constable Ken Jones)

34.     Incorporating all allegations herein, Defendants Harris County and Constable Jones are liable to the Plaintiff for, under color of state law, violating his right to safety and reasonable medical care while in government custody, guaranteed by the Fourteenth Amendment.

35.     Defendants Harris County and Constable Jones were deliberately indifferent to the serious risks Deavyn Gordon and others with similar mental health issues pose to themselves and

to others because they did not adequately train the Defendant deputies and because Defendants Harris County and Constable Jones failed to adequately supervise the Defendant deputies knowing that they posed a substantial risk to people in Mr. Gordon's position in circumstances, which, as peace officers, they were likely to encounter. The Defendant deputies failed to conduct or supervise a search of Mr. Gordon which should have been routine both as a matter of official policy and common sense, which any reasonable officer would have done, because Mr. Gordon was suicidal, in possession of a gun, and was actively reaching for the gun. The Defendant deputies then secluded him with the gun after detaining him. Such obvious failures could only have been the result of an intentional or deliberately indifferent failure in Defendants Harris County and Constable Jones' training and supervision practices.

## DAMAGES

36. The actions of Defendants, together and separately, caused Deavyn Gordon to suffer damages in the past and in the future, including, but not necessarily limited to, physical pain, medical bills, mental anguish, impairment, disfigurement, lost wages and wage earning capacity, attorneys' fees, and court costs, for which Defendants are jointly and severally liable.

## EXEMPLARY DAMAGES

37. Plaintiff is entitled to exemplary damages for Defendants' violation, under color of state law, of Plaintiff's constitutional rights guaranteed by the Fourteenth Amendment.

## DECLARATORY AND INJUNCTIVE RELIEF

38. Plaintiff seeks declaratory relief that Defendants violated his rights under the U.S. Constitution, Title II of the ADA, and Section 504 of the Rehabilitation Act, as described above.

39. Plaintiff seeks injunctive relief to prevent Defendants from continuing their current policies, customs and procedures related to mental health service calls, as described above, insofar as they may apply to the Plaintiff in the future.

## ATTORNEYS' FEES

40. As a result of Defendants' conduct, Plaintiff had to retain attorneys to protect his rights. Plaintiff will also expend costs and possibly expert witness fees. Therefore, pursuant to 42 U.S.C. §§794a, 1988, and 12133, and, Plaintiff asks that the court award him costs, reasonable attorneys' fees (through trial and all appeals), and expert witness fees.

## JURY DEMAND

41. Plaintiff demands a jury trial on all issues which may be tried to a jury.

## PRAYER

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer and that, upon trial, the Court enter judgment for Plaintiff against Defendants, jointly and severally, for:

a. actual damages in an amount to be determined by the jury;

b. exemplary damages in an amount to be determined by the jury;

c. reasonable and necessary attorneys' fees, costs, and expert witness fees available under law;

d. declaratory relief that Defendants violated his rights under the U.S. Constitution, Title II of the ADA, and Section 504 of the Rehabilitation Act, as described above;

e. injunctive relief, preventing Defendants from continuing their current policies, customs, and procedures related to mental health service calls, as described above, insofar as they may apply to the Plaintiff in the future;

f.  pre-judgment and post-judgment interest at the maximum amount allowed by law; and

g.  such other relief, legal and equitable, general and specific, to which Plaintiff is justly entitled.

Respectfully submitted,

**NIELSEN & MUKERJI, LLP**

By: __/s/ Sam K. Mukerji_____
  Sam K. Mukerji
  State Bar No. 24053377
  ATTORNEY IN CHARGE

  Eric D. Nielsen
  State Bar No. 15021625
  2405 Smith Street
  Houston, Texas 77006
  Tel: (713) 973-1300
  Fax: (713) 973-2228
  eric@nmtriallawfirm.com

**TEXAS CIVIL RIGHTS PROJECT**

By:  __/s/ Amin Alehashem_____
  Amin Alehashem
  State Bar No. 24073832
  S. Dist. No. 1134538
  2006 Wheeler Ave.
  Houston, Texas 77004
  Tel: (832) 767-3650
  Fax: (832) 554-9981

  James C. Harrington
  State Bar No. 09048500
  S. Dist. No. 4025
  Wayne Krause Yang
  State Bar No. 24032644

                                                          1405 Montopolis Dr.
Austin, TX 78741
Tel: (512) 474-5073
Fax: (512) 474-0726

**ATTORNEYS FOR PLAINTIFF**